IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

PAUL PERAZA,
:
            Plaintiff           :
                                :
     v.                         :   CIVIL NO.3:CV-12-1353
                                :
                                :   (Judge Conaboy)
UNITED STATES OF AMERICA,       :
            Defendant           :

# MEMORANDUM
## Background

This pro se Federal Tort Claims Act (FTCA) complaint was filed by Paul Peraza, an inmate presently confined at the United States Penitentiary, Florence, Colorado (USP-Florence). Named as Defendant is the United States of America.[1]

Plaintiff's action regards events which purportedly transpired during his prior confinement at the Allenwood United States Penitentiary, White Deer, Pennsylvania (USP-Allenwood) which lasted from March 29, 2009 until April 28, 2011.

According to the Complaint, on or about June 4, 2010 Plaintiff was left "unattended" in a strip cage "while grossly intoxicated" by Correctional Officers Dunkelberger and Hicks. Doc. 1, ¶ IV(1). When "he was later checked" by Correctional Officer Yarger, Peraza allegedly requested permission to use the bathroom

---

[1] Under the FTCA, sovereign immunity is waived against persons suing the federal government for the commission of various torts. See Simon v. United States, 341 F. 3d 193, 200 (3d Cir. 2003). The only proper Defendant for purposes of an FTCA claim is the United States of America. See 28 U.S.C. § 2679(d).

1

or in the alternative to be provided a urinal. After Yarger refused his request, Plaintiff states that he was forced to urinate on the floor.

The next time Peraza saw Yarger he purportedly informed the officer that there was urine on the cage floor. It is asserted that Yarger did not take any action to clean up the urine and again left Plaintiff unattended despite the fact that the prisoner was heavily intoxicated. Peraza claims that he subsequently slipped in the urine and hit his head on the concrete floor. He allegedly suffered a gash which required sutures.

Following this incident, Peraza was placed in four point restraints by five correctional officers while still "grossly intoxicated" and "clearly disoriented."[2] Id. at p. 4. Peraza was purportedly left unattended in that position and "was overtaken with alcohol poisoning" which required him to undergo emergency treatment at an outside hospital.[3] Id. Plaintiff seeks monetary damages for disfigurement, loss of memory and

---

[2] A copy of the May 23, 2012 denial of Plaintiff's administrative tort claim which accompanies the Complaint describes Peraza as being both intoxicated and combative. See Doc. 1, Exhibit A.

Four point restraints involves placing an inmate in a supine position on his bed and binding his hands in soft restraints to the corners of his bed. See Kee v. Hasty, 2004 WL 807071 1, n. 3. (S.D. N.Y. April 14, 2004).

[3] Peraza theorizes that due to a a combination of his head injury, four point restraints, high level of intoxication, and being left unattended he suffered alcohol poisoning.

2

concentration, as well as emotional distress suffered as a result of the incident.[4]

Presently pending is Defendant's motion to dismiss or in the alternative for summary judgment. See Doc. 30. The motion is ripe for consideration.[5]

## **Discussion**

Defendant claims that it is entitled to entry of dismissal or in the alternative summary judgment on the grounds that: (1) Plaintiff has failed to establish a viable negligence claim; (2) Peraza's slip and fall claim is barred by Pennsylvania's comparative negligence statute; (3) the Defendant did not owe a duty to Plaintiff under assumption of risk doctrine;[6] and (4) Peraza failed to submit a required certificate of merit.

---

[4] The Complaint further contends that Plaintiff developed a urinary tract infection due to negligent treatment provided to him at the hospital. However, this claim does not implicate negligent treatment by any federal official and thus will not be considered.

[5] By Order dated April 3, 2013, Plaintiff was granted thirty (30) days following resolution of his motion to compel discovery in which to file a response to Defendants' dispositive motion. Plaintiff's second motion to compel was partially granted by Order dated August 23, 2013. Hence, Plaintiff's response to the dispositive motion was due September 23, 2013.

[6] Pennsylvania's assumption of the risk doctrine bars recovery "if a defendant can show that the injured party knew of the dangerous condition, which was both obvious and avoidable, yet still voluntarily encountered it." Harris v. Kellogg, Brown & Root Services, Inc., 724 F.3d 458, 470 (3d Cir. Aug. 1, 2013). The defendant must show that the nature and extent of the risk were fully appreciated and that the plaintiff voluntarily proceeded to face that risk." Barnes v. American Tobacco, Co., 161 F.3d 127 (3D Cir. 1998).

3

**Standard of Review**

Defendants' pending dispositive motion is supported by evidentiary materials outside the pleadings. Federal Rule of Civil Procedure 12(d) provides in part as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(b)(d). The Court will not exclude the evidentiary materials accompanying the Defendant's motion. Thus, the motion will be treated as solely seeking summary judgment. See Latham v. United States, 306 Fed. Appx. 716, 718 (3d Cir. 2009)(when a motion to dismiss has been framed alternatively as a motion for summary judgment such as in the present case, the alternative filing "is sufficient to place the parties on notice that summary judgment might be entered.")

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is

4

"genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the

evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Slip and Fall**

Defendant's initial argument is that Plaintiff has failed to state or establish a negligence claim with respect to his slip and fall. See Doc. 34, p. 9. The Defendant explains that entry of summary judgment is appropriate since prison staff did not know of any unreasonable risk to Plaintiff's safety prior to his fall. Alternatively, it is argued that Defendant did not know that Plaintiff would fail to protect himself from a risk he created.

The FTCA provides a remedy in damages for the simple negligence of employees of the United States. See United States v. Muniz, 374 U.S. 150, 150 (1963). Under the FTCA, sovereign immunity is waived against persons suing the federal government for the commission of various torts. See Simon v. United States, 341 F. 3d 193, 200 (3d Cir. 2003). A plaintiff pursuing an FTCA claim must show: (1) that a duty was owed to him by a defendant; (2) a negligent breach of said duty; and (3) that the negligent breach was the proximate cause of the plaintiff's injury/loss. Mahler v. United States, 196 F. Supp. 362, 364 (W.D. Pa. 1961).

It is well-settled that a federal district court addressing an FTCA action must apply the law of the state, in this case Pennsylvania, in which the alleged tortious conduct occurred. 28

6

U.S.C. § 1346(b) (1996); Toole v. United States, 588 F.2d 403, 406 (3d Cir. 1978); O'Neal v. Department of Army, 852 F. Supp. 327, 334-35 (M.D. Pa. 1994); Turner v. Miller, 679 F. Supp. 441, 443 (M.D. Pa. 1987). However, in cases such as this which involve federal prisoners, it has been recognized that the government's duty of care is one of ordinary diligence. See 18 U.S.C. § 4042; Turner, 679 F. Supp. at 443. The applicable law with respect to the burden and quantum of proof under the FTCA remains that of the state in which the alleged tortious conduct occurred. Hossic v. United States, 682 F. Supp. 23, 25 (M.D. Pa. 1987).

Under Pennsylvania law, a plaintiff is required to show that the defendant's negligence was the proximate cause of his injury by a preponderance of the evidence. Baum v. United States, 541 F. Supp. 1349, 1351 (M.D. Pa. 1982).[7] Pennsylvania law recognizes inmates as being invitees. See Graf v. County of Northhampton, 654 A.2d 131, 134 (Pa. Cmwlth. 1995). As a result, an inmate/invitee who seeks to establish liability for physical harm caused by a condition on the land must show that the possessor of the land: (1) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to the invitee; (2) should expect that the invitee will not discover or realize the danger or will fail to protect himself

---

[7] Pennsylvania law defines proximate cause as causation which was a substantial factor in bringing about the injury. Hamil v. Bashline, 392 A.2d 1280, 1284 (Pa. 1978).

7

against it; and (3) fails to exercise reasonable care to protect the invitee against the danger. Carrender v. Fitterer, 469 A.2d 120, 123 (Pa. 1983).

The mere existence of a harmful condition or the happening of an accident does not by itself raise a presumption of negligence. Moultrey v. Great A & P Tea Co., 422 A.2d 593, 596, n.5 (Pa. Super. 1980). Under Pennsylvania law, a plaintiff is required to show that the defendant's negligence was the proximate cause of his injury by a preponderance of the evidence. Baum, 541 F. Supp. at 1351. Thus, "[a]n invitee must prove either the proprietor of the land had a hand in creating the harmful condition, or he had actual or constructive notice of such condition." Swift v. Northeastern Hospital, 690 A.2d 719, 722 (Pa. Super. 1997).

A supporting declaration submitted under penalty of perjury by USP-Allenwood Lieutenant Matthew Saylor provides that after observing Peraza entering the prison dining hall for lunch, he suspected that the prisoner was intoxicated and directed a correctional officer to perform a breathalyzer test. See Doc. 36-1, p. 16. ¶ 5. Peraza refused to take the breathalyzer and was escorted while in hand restraints to the prison's Special Housing Unit (SHU) and placed in a holding cell pending further investigation.

A declaration by Lieutenant James Marr states that Peraza was escorted to the SHU at approximately 12:45 p.m. After being

8

placed in a holding cell Peraza refused an order by Marr to have his restraints removed and stood in a corner of the holding cell where he proceeded to urinate on the floor. Marrr states that he never heard Plaintiff make a request to use a toilet or urinal. Correctional Officer David Robatin has likewise submitted a declaration acknowledging that he was working the SHU on June 4, 2010. Robatin avers that approximately 1:00 p.m. he heard "a commotion coming from the [SHU] holding cell." Id. at p. 38, ¶ 4. Robatin states he immediately responded and saw Plaintiff lying on the floor of his cell.

A declaration by Senior Officer Specialist David Hughes states that while assigned to the SHU on the day in question he observed Plaintiff standing in the corner of the holding cell at approximately 12:45 p.m. with his hands handcuffed behind his back. See id., at p. 28, ¶¶ 4-5. When Hughes asked Perzaza what he was doing, the inmate replied that he was urinating. Hughes adds that "at no time did I hear the Plaintiff request to use a toilet or ask for a urinal." Id. at ¶ 7. Hughes adds that the Plaintiff stepped back, he slipped and fell hitting his head on the floor and wall and suffered a laceration above his left eye.

According to Hughes' declaration, as well as a submitted videotape of the incident[8], when officers attempted to transport

---

[8] The videotape footage, which has been viewed by the Court, begins at 1:12 p.m. at which point Plaintiff has already fallen and is seated in a wheelchair outside the holding cell
(continued...)

9

Plaintiff to the infirmary he was combative. His aggressive actions included the yelling of obscenities, spitting at the officers, attempts to bite two correctional officers, and resistance to medical treatment. Due to his unruly behavior, Plaintiff was placed in four point restraints.

Peraza admits that he was highly intoxicated on June 4, 2010 in clear violation of prison rules. He does not dispute that his condition was self induced. Plaintiff also acknowledges that he urinated on the floor of his holding cell creating the condition upon which he slipped and fell.[9]

However, Plaintiff claims that the creation of the risk was not due to his drunken misadventure but rather caused by Correctional Officer Yarger's refusal to provide him with access to a toilet or urinal.[10] In a declaration submitted under penalty of perjury, Yarger admits that he escorted Plaintiff to the SHU holding cell and then requested that Peraza submit to breathalyzer testing. Yarger generally denies having any involvement with respect to the other issues raised by Plaintiff. Given Yarger's

---

[8](...continued)
awaiting transfer. See Doc. 36, Exhibit 10-1.

[9] The parties admit that pursuant to prison policy, urinals are to be given to inmates upon request and urine is to be cleaned up as soon as possible.

[10] Since Plaintiff does not dispute that he refused to allow his hand restraints to be removed it is unclear as to how he envisioned himself using a urinal. Likewise, he offers no explanation as to why it would have been reasonable to allow him out of the cell to use a toilet given his non-compliant behavior.

10

failure to definitively deny that Peraza asked him for the use of a toilet or a urinal, the Court finds that there is an a factual dispute as to whether Plaintiff requested the use of a toilet or urinal from Yarger.

Despite that factual dispute, the undisputed record shows that after being placed in the holding cell the Plaintiff was non-compliant and refused to allow his hand restraints to be removed. Based upon those actions, it is apparent to this Court that poor decision making by the Plaintiff impeded his ability to use either a urinal or obtain access to a toilet.

Defendant further asserts that the urine could not have been cleaned up immediately due to the Plaintiff's intoxicated condition. According to the evidence submitted by Defendant, Plaintiff was escorted to the SHU at approximately 12:45 p.m. By approximately 1:00 p.m., Correctional Officer David Robatin heard a commotion coming from the holding cell and discovered that the Plaintiff had fallen in his cell. See Doc. 36-1, p. 38 ¶ 4. The submitted videotape shows that by 1:12 p.m. Plaintiff was out of the holding cell and seated in a wheelchair. Based upon that approximated time line, the events relevant to Peraza's slip and fall transpired within a brief period. Clearly, there is no evidence which could support a claim that Peraza was either denied access to a toilet or urinal for a prolonged period or that the urine remained on the floor for an unreasonable period of time.

11

It is undisputed that: (1) Plaintiff was placed in the SHU holding cell at approximately 12:45 p.m.; (2) he was intoxicated, and non-compliant as evidenced by the fact that his hands were handcuffed behind him because he refused to allow them to be removed; (3) within minutes of his arrival Peraza urinated on the floor of the holding cell; (3) Plaintiff was clearly aware of the presence of urine on the floor; (4) within at most minutes he thereafter slipped and fell in the urine while still intoxicated.

Although liberal standards must be applied to pro se litigants, this is clearly not a case where urine was left on a cell floor for an unreasonable period of time.  Since Plaintiff refused to allow his hand restraints to be removed, it is equally apparent that even if one had been provided he could not have used a urinal.  Rather, this is simply a case where the Plaintiff as a result of his self-induced intoxication, made an ill advised decision to refuse the removal of his hand restraints and chose to urinate on the floor of his cell thus, creating a risk.  Due to his intoxicated and agitated condition, Peraza then failed to exercise reasonable care which caused him to slip in his own urine and fall.

Based upon those considerations, the Complaint is simply insufficient to assert a cognizable negligence claim under the controlling Pennsylvania state legal standards.  Accordingly, entry of summary judgment in favor of Defendants with respect to Peraza's FTCA claim that his slip and fall was the result of negligence by USP-Allenwood staff is appropriate.

12

**Comparative Negligence**

Defendant further argues that "if this Court were to find that Peraza can establish a negligence claim, then Peraza is barred from recovery due to the comparative negligence statute." Doc. 34, p. 15. Specifically, they assert that Plaintiff's negligence with respect to his slip and fall claim "exceeds that of all alleged negligence of the prison staff (well over 50%)." Id. at p. 16.

Under Pennsylvania's comparative negligence statute, 42 Pa. Cons. Stat. Ann. § 7102, a plaintiff's negligence bars recovery only when it is greater than that of the defendant. See Bouchard v. CSX Transp. Inc., 196 Fed. Appx. 65 (3d Cir. 2006). This Court recognizes that comparative negligence is ordinarily an issue for the jury. Nonetheless, assuming that Yarger could be deemed negligent by denying a request by Plaintiff to use a urinal upon the prisoner's arrival in the SHU, it is apparent for the considerations listed above, that negligence of the Plaintiff, stemming from his drunken, belligerent behavior (including his decision to not allow removal of his hand restraints) and his ill conceived decision to urinate on the floor of his cell, exceeds all alleged negligence attributed to the prison staff.

**Medical Negligence**

Defendant asserts that Peraza needs expert testimony to support his allegation that the medical treatment provided to him on June 4, 2010 deviated from acceptable medical standards, and to

13

show that the deviation was the proximate cause of his injuries." Doc. 34, p. 19. The Defendant concludes that because Plaintiff has failed to either file a certificate of merit as required by Pennsylvania Rule of Civil Procedure 1042.3 or seek an extension of time in which to do so, his FTCA claim of medical negligence cannot proceed.

On March 7, 2013, Plaintiff responded to this argument by executing and filing a certificate pursuant to Pennsylvania Rule of Civil Procedure 1042.3(a)(3) stating that expert testimony by an appropriate licensed professional was not required in this matter as all claims are based on established and thoroughly documented procedure and practice. See Doc. 45.

The Complaint indicates that the USP-Allenwood medical staff was negligent by allowing Peraza to be placed in four point restraints while intoxicated and after having suffered a head injury. Plaintiff concludes that this negligence caused him to suffer alcohol poisoning which required him to undergo emergency medical care at an outside hospital.

In order to present a prima facie case of medical malpractice/negligence under Pennsylvania state law, a plaintiff has the burden of presenting expert testimony by an appropriate licensed professional who can testify to a reasonable degree of medical certainty that the actions or omissions of the defendant deviated from acceptable medical standards, and that said deviation constituted a substantial factor in causing the Plaintiff's injury.

14

Simpson v. Bureau of Prisons, 2005 WL 2387631 *5 (M.D. Pa. Sept. 28, 2005)(Vanaskie, C.J.).[11]

Rule 1042.3 requires a person who brings a claim of medical malpractice/negligence to file an appropriate certificate of merit either with the complaint or within sixty (60) days thereafter. The Rule 1042.3 certificate must certify that either: (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the conduct which is the subject of the complaint fell outside acceptable professional standards and was a cause in bringing about the harm; (2) the claim of deviation by defendant from an acceptable professional standard is based solely upon allegations that other licensed professionals for whom defendant is responsible deviated from an acceptable professional standard; (3) expert testimony of an appropriate licensed professional is unnecessary.

Courts within this circuit have recognized that Rule 1042.3 is substantive law and should be applied by federal courts sitting in diversity. Schwalm v. Allstate Boliler & Construction, 2005 WL 1322740 *1 (M.D. Pa. May 17, 2005)(Caputo, J.); Scaramuzza v.

---

[11] The only exception to this rule is where the matter "is so simple and the lack of skill or want of care is so obvious as to be within the range of ordinary experience and comprehension of even nonprofessional persons." Berman v. United States, 205 F. Supp.2d 362, 264 (M.D. Pa. 2002) (citing Brannan v. Lankenau Hospital, 490 Pa. 588 (1980). However, the instances when expert opinions may be unnecessary are rare. See Simpson, 2005 WL *6; Arrington v. Inch, 2006 WL 860961 *7 (M.D. Pa. March 30, 2006)(Conner, J.).

15

Sciolla, 345 F. Supp.2d 508, 509-10 (E.D. Pa. 2004). It has also been held that a Plaintiff pursuing an FTCA claim must comply with Pennsylvania substantive law. Arrington, 2006 WL 860961 at *7. In addition, Plaintiff's incarceration or pro se status is not a viable basis upon which to excuse compliance with Rule 1042.3 or the requirement of coming forth with expert medical testimony. See Perez v. Griffin, 2008 WL 2383072 *3 (M.D. Pa. June 9, 2008)(Rule 1042.3 applies to incarcerated and pro se plaintiffs and constitutes a rule of substantive state law to which plaintiffs in federal court must comply).

Peraza has not identified any medical expert or submitted a report from any medical expert. However, he has submitted a notice vaguely indicating that the expert testimony is unnecessary. In order to state a prima facie case of negligence under the FTCA, it is the conclusion of this Court that Peraza must come forward with expert testimony to support his claim that the treatment and decisions afforded to him on June 4, 2010 by the USP-Allenwood medical staff deviated from acceptable medical standards, and to show that the deviation was the proximate cause of his injuries. Peraza's bald self-serving assertion that expert testimony is not required is not compelling.

In light of his failure to present any valid reason as to why an expert witness is not required or show that he has retained an expert witness, it is appropriate for this Court to dismiss his

16

FTCA claim of negligent medical care without prejudice. See <u>Osorio v. United States</u>, 2007 WL 2008498 *2 (W.D. Pa. July 5, 2007); see also <u>Henderson v. Pollack</u>, 2008 WL 282372 *4 (M.D. Pa. Jan 31, 2008)(Caldwell, J.)(citing <u>Hartman v. Low Security Correctional Institution, Allenwood</u>, 2005 WL 1259950 *3 (M.D. Pa. May 27, 2005)(Muir, J.).[12] For the reasons set forth herein, Defendant's motion for summary judgment will be granted. An appropriate Order will enter.[13]

<u>S/Richard P. Conaboy</u>
RICHARD P. CONABOY
United States District Judge

DATED: SEPTEMBER 27, 2013

---

[12] Based upon the conclusions reached herein, a discussion of Defendant's assumption of the risk argument is not required.

[13] The Court recognizes that Plaintiff may have only recently received some discovery responses from the Defendant. Moreover, although Peraza responded to one of the pending summary judgment arguments by filing his "Certificate of Merit," he has not filed an opposing brief and may not have realized that the deadline for doing so recently passed.
    Accordingly, Plaintiff is advised that he may seek reconsideration of the Court's determinations herein by filing a motion for reconsideration within fourteen (14) days of the date of this Memorandum and Order.

17